1

2

3

4

5

6

7

8               IN THE UNITED STATES DISTRICT COURT

9            FOR THE EASTERN DISTRICT OF CALIFORNIA

10   BRIAN HOGUE,

11          Petitioner,                2: 08 - cv - 1056 - FCD TJB

12      vs.

13   CALIFORNIA BOARD OF

14   PAROLE HEARINGS, et al.,

15          Respondents.              ORDER, AMENDED FINDINGS AND

16                                    RECOMMENDATIONS

17   _____/

18                      I.  INTRODUCTION

19      Petitioner, Brian Hogue, is a state prisoner proceeding *pro se* with a petition for writ of

20   habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner is currently serving a sentence of life

21   imprisonment after pleading guilty to first degree murder with a firearm enhancement in 1977.

22   Petitioner challenges the February 2007 decision by Governor Schwarzenegger reversing the

23   October 2006 decision by the Board of Parole Hearings (the "Board") which had granted

24   Petitioner parole.  Petitioner presents several claims in his petition; specifically:  (1) the

25   Governor's reversal of Petitioner's parole release date was an abuse of discretion as there was no

26   evidence to support the reversal ("Claim I"); (2) the Governor was without authority to revoke

1  Petitioner's parole as his decision violates the Ex Post Facto Clause ("Claim II"); and (3) failure

2  of the Board to set a parole date violates Petitioner's due process and equal protection rights

3  ("Claim III").  For the following reasons, the December 14, 2010 findings and recommendations

4  are vacated and it is recommended that Petitioner's habeas petition be denied.

5                    II.  FACTUAL[1] AND PROCEDURAL BACKGROUND

6           On the evening of May 1, 1977, Brian Hogue shot and killed 61-
            year-old Fred Piperio.  Brian went to a bar, where he drank a few
7           beers.  Armed with a loaded handgun, Brian demanded cash from
            Fred while Fred was counting money from the register.  Fred gave
8           Brian cash.  Brian then instructed Fred to go into the bathroom and
            lie down.  Again, Fred complied.  At that point, Brian took out his
9           gun and shot Fred in the back of the head, killing him.  Brian left
            the bar.
10
            Brian told a friend that he was going to the Redding Municipal
11          Airport.  The friend informed police and Brian was arrested at the
            airport.  He had more than $1,000 in his possession.  Brian
12          admitted to police that he robbed the victim and shot him in the
            back of the head.
13
            Mr. Hogue pled guilty to first-degree murder and was sentenced to
14          life in prison plus a consecutive five-years-to-life sentence for
            using a firearm.
15

16  (Resp't's Answer, Ex. A at p. 97.)  In October 2006, the Board conducted a subsequent parole

17  consideration hearing.  The Board ultimately concluded that Petitioner was suitable for parole

18  and would not pose an unreasonable risk of danger to society or a threat to public safety if

19  released from prison.  In February 2007, the Governor reversed the Board's decision and found

20  that Petitioner would pose an unreasonable risk of danger to society if released at that time.

21         Petitioner challenged the Governor's decision in the County of Shasta Superior Court.

22  The Superior Court denied Petitioner's state habeas petition in a decision on October 20, 2007.

23  The California Court of Appeal, Third Appellate District summarily denied Petitioner's state

24  _____

25         [1] The factual background of the commitment offense is taken from the Governor's
    decision which reversed the Board's parole grant and is attached to Respondent's Answer at Ex.
26  A.

1  habeas petition on December 6, 2007.  The California Supreme Court summarily denied

2  Petitioner's state habeas petition on March 12, 2008.  Petitioner filed the instant federal habeas

3  petition in May 2008.

4       On December 14, 2010, the undersigned issued findings and recommendations which

5  recommended granting Petitioner federal habeas relief on Claim I.  Respondent filed objections

6  to the findings and recommendations and Petitioner filed a reply to Respondent's objections.  On

7  January 25, 2011, District Judge Frank C. Damrell referred the matter back to the undersigned in

8  light of the United States Supreme Court's decision in Swarthout v. Cooke, No. 10-333, – S.Ct.–,

9  2011 WL 197627 (Jan. 24, 2011) (per curiam).

10                III.  APPLICABLE LAW FOR FEDERAL HABEAS CORPUS

11       An application for writ of habeas corpus by a person in custody under judgment of a state

12  court can only be granted for violations of the Constitution or laws of the United States.  See 28

13  U.S.C. § 2254(a); see also Peltier v. Wright, 15 F.3d 860, 861 (9th Cir. 1993); Middleton v.

14  Cupp, 768 F.2d 1083, 1085 (9th Cir. 1985) (citing Engle v. Isaac, 456 U.S. 107, 119 (1982)).

15  Petitioner filed this petition for writ of habeas corpus after April 24, 1996, thus the Antiterrorism

16  and Effective Death Penalty Act of 1996 ("AEDPA") applies.  See Lindh v. Murphy, 521 U.S.

17  320, 326 (1997).  Under AEDPA, federal habeas corpus relief is not available for any claim

18  decided on the merits in the state court proceedings unless the state court's adjudication of the

19  claim: (1) resulted in a decision that was contrary to, or involved an unreasonable application of,

20  clearly established federal law, as determined by the Supreme Court of the United States; or (2)

21  resulted in a decision that was based on an unreasonable determination of the facts in light of the

22  evidence presented in state court.  See 28 U.S.C. 2254(d).  Where a state court provides no

23  reasoning to support its conclusion, a federal habeas court independently reviews the record to

24  determine whether the state court was objectively unreasonable in its application of clearly

25  established federal law.  See Musladin v. Lamarque, 555 F.3d 830, 835 (9th Cir. 2009); see also

26  Delgado v. Lewis, 223 F.3d 976, 981-82 (9th Cir. 2000), overruled on other grounds, Lockyer v.

1    Andrande, 538 U.S. 63 (2003).  Recently, the United States Supreme Court reiterated that

2    "[w]here a state court's decision is unaccompanied by an explanation, the habeas petitioner's

3    burden still must be met by a showing there was no reasonable basis for the state court to deny

4    relief."  Harrington v. Richter, No. 09-587, – S.Ct. –, 2011 WL 148587, at *9 (Jan. 19, 2011).

5            As a threshold matter, this Court must "first decide what constitutes 'clearly established

6    Federal law, as determined by the Supreme Court of the United States.'"  Lockyer, 538 U.S. at

7    71 (quoting 28 U.S.C. § 2254(d)(1)).  "'[C]learly established federal law' under § 2254(d)(1) is

8    the governing legal principle or principles set forth by the Supreme Court at the time the state

9    court renders its decision.'"  Id. (citations omitted).  Under the unreasonable application clause, a

10   federal habeas court making the unreasonable application inquiry should ask whether the state

11   court's application of clearly established federal law was "objectively unreasonable."  See

12   Williams v. Taylor, 529 U.S. 362, 409 (2000).  Thus, "a federal court may not issue the writ

13   simply because the court concludes in its independent judgment that the relevant state court

14   decision applied clearly established federal law erroneously or incorrectly.  Rather, that

15   application must also be unreasonable."  Id. at 411.  Although only Supreme Court law is binding

16   on the states, Ninth Circuit precedent remains relevant persuasive authority in determining

17   whether a state court decision is an objectively unreasonable application of clearly established

18   federal law.  See Clark v. Murphy, 331 F.3d 1062, 1070 (9th Cir. 2003) ("While only the

19   Supreme Court's precedents are binding . . . and only those precedents need be reasonably

20   applied, we may look for guidance to circuit precedents.").

21           The first step in applying AEDPA's standards is to "identify the state court decision that

22   is appropriate for our review."  See Barker v. Fleming, 423 F.3d 1085, 1091 (9th Cir. 2005).

23   When more than one court adjudicated Petitioner's claims, a federal habeas court analyzes the

24   last reasoned decision.  Id. (citing Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991)).  The last

25   reasoned decision on the merits came from the County of Shasta Superior Court with respect to

26   Claims I and II.  With respect to Claim III, the California Supreme Court denied that Claim on

1   the merits without discussion.  Thus, with respect to Claim III the standard is also whether the

2   state court was objectively unreasonable in its application of clearly established federal law.

3                    IV.  PETITIONER'S CLAIMS FOR REVIEW

4          A.  Claim I

5          In Claim I, Petitioner argues that the Governor's reliance on the circumstances

6   surrounding his commitment offense in denying him parole violated his due process rights.  The

7   Due Process Clause of the Fourteenth Amendment prohibits state action that deprives a person of

8   life, liberty, or property without due process of law.  A person alleging a due process violation

9   must first demonstrate that he or she was deprived of a protected liberty or property interest, and

10  then show that the procedures attendant upon the deprivation were not constitutionally sufficient.

11  See Ky. Dep't of Corr. v. Thompson, 490 U.S. 454, 459-60 (1989).  The full panoply of rights

12  afforded a defendant in a criminal proceeding is not constitutionally mandated in the context of a

13  parole proceeding.  See Pedro v. Or. Parole Bd., 825 F.2d 1396, 1398-99 (9th Cir. 1987).  The

14  Supreme Court has held that a parole board's procedures are constitutionally adequate if the

15  inmate is given an opportunity to be heard and a decision informing him of the reasons he did not

16  qualify for parole.  See Greenholtz v. Inmates of Neb. Penal and Corr. Complex, 442 U.S. 1, 16

17  (1979).

18         The landscape of a California state prisoner bringing a due process claim for a denial of

19  parole has changed with the recent United States Supreme Court decision in Swarthout, 2011

20  WL 197627.  Prior to Swarthout, the Ninth Circuit held that as a matter of state law, denial of

21  parole to California inmates must be supported by at least "some evidence" demonstrating

22  current dangerousness.  See Hayward v. Marshall, 603 F.3d 546, 562-63 (9th Cir. 2010) (en

23  banc).  In its decision in Cooke v. Solis, 606 F.3d 1206, 1213 (9th Cir. 2010) rev'd by,

24  Swarthout, 2011 WL 197627, the Ninth Circuit had held that "California's 'some evidence'

25  requirement is a component of the liberty interest created by the parole system of the state."

26         Swarthout reversed the Ninth Circuit in Cooke.  The Supreme Court stated that with

1   regarding a California state prisoner's due process rights with respect to parole that:

> 2   Whatever liberty interest exists is, of course, a *state* interest created
>     by California law.  There is no right under the Federal Constitution
> 3   to be conditionally released before the expiration of a valid
>     sentence, and the States are under no duty to offer parole to their
> 4   prisoners.  When, however, a state creates a liberty interest, the
>     Due Process Clause requires fair procedures for its vindication –
> 5   and federal courts will review the application of those
>     constitutionally required procedures.  In the context of parole, we
> 6   have held that the procedures required are minimal.  In Greenholtz,
>     we found that a prisoner subject to a parole statute similar to
> 7   California's received adequate process when he was allowed an
>     opportunity to be heard and was provided a statement of the
> 8   reasons why parole was denied.  442 U.S. at 16.  "The
>     Constitution," we held, "does not require more."  Ibid.

9

10  Swarthout, 2011 WL 197627, at *2.  The Supreme Court continued by explaining that,

11  "[b]ecause the only federal right at issue is procedural, the relevant inquiry is what process [the

12  petitioners] received, not whether the state court decided the case correctly."  Id. at *3.

13          Pursuant to the decision in Swarthout, Petitioner is not entitled to federal habeas relief on

14  Claim I.  In this case, Petitioner was given an opportunity to be heard at his parole suitability

15  hearing.  He also was given a statement of reasons why parole was eventually denied by the

16  Governor.  As the Supreme Court stated in Greenholtz and reaffirmed in Swarthout, that is all

17  that is required under the Federal Constitution.  The fact that Petitioner was denied parole by the

18  Governor rather than the Board also does not mean that Petitioner is entitled to federal habeas

19  relief.  One of the petitioners in Swarthout (Elijah Gray) had been found suitable for parole by

20  the Board, but the Governor reversed.  See 2011 WL 197627, at *2.  Even though it was the

21  Governor rather than the Board that found the petitioner unsuitable for parole, the United States

22  Supreme Court made no distinction regarding the due process that was due to a petitioner under

23  such circumstances.  While Petitioner raises several issues regarding whether the Governor acted

24  properly in finding that Petitioner was "currently dangerous" under the relevant California parole

25  regulations scheme, a federal habeas court should not reach that issue.  As the Supreme Court

26  recently held in Swarthout, "the only federal right at issue is procedural," and the relevant inquiry

1    is the process that the petitioner received, not whether the state courts decided the case correctly.

2    See 2011 WL 197627 at *3.  Therefore, Petitioner's due process argument does not merit federal

3    habeas relief under these circumstances.

4         B.  Claim II

5         In Claim II, Petitioner argues that his right under the Ex Post Facto Clause of the

6    Constitution was violated because his suitability for parole was determined under the DSL

7    (Determinate Sentencing Law) rather than the ISL (Indeterminate Sentencing Law).  The Ninth

8    Circuit has determined that the Ex Post Facto Clause is not violated when a defendant sentenced

9    under California's ISL is denied parole under DSL parole suitability guidelines.  See Connor v.

10   Estelle, 981 F.2d 1032, 1033-35 (9th Cir. 1992) (per curiam).  In Connor, the Ninth Circuit stated

11   that, "[w]e agree with the California courts that have considered the issue and hold that the

12   application of the DSL parole-suitability guidelines to prisoners sentenced under the ISL does not

13   disadvantage them, and therefore does not violate the federal constitutional prohibition against ex

14   post facto laws."  981 F.2d at 1034.  Thus, Petitioner is not entitled to federal habeas relief on

15   Claim II.

16        Reading the petition liberally, Petitioner also appears to argue that the Governor's review

17   of the Board's grant violated the Ex Post Facto clause since the Governor did not have such

18   authority at the time of Petitioner's offense.  In a factually similar case to the case at bar, the

19   Ninth Circuit rejected an argument by a petitioner that the California Governor's reversal of the

20   Board's decision granting parole violated the Ex Post Facto Clause.  See Johnson v. Gomez, 92

21   F.3d 964 (9th Cir. 1996).  Ultimately, the Ninth Circuit found as follows:

22            In this case, Johnson is similarly unable to demonstrate that an
              increase in his punishment actually occurred, because, like the
23            petitioner in Morales, he had not been granted parole under the old
              law.  Under the old law, BPT's decision would have been subject
24            to no review.  Johnson's case is like Dobbert [v. Florida 432 U.S.
              282 (1977)], where the petitioner could only speculate whether the
25            jury would have imposed a life sentence had it possessed the final
              power to decide.  Here, because the BPT's parole decision is not
26            final until after the expiration of the thirty-day gubernatorial review

1     period, it cannot be said with certainty that the BPT would have
      granted Johnson parole had it possessed final review authority.
2     Johnson argues that, unlike the administrative convenience purpose
      of the law in Morales, the purpose and effect of the law here is to
3     lengthen prison terms by making it more difficult for convicted
      murderers with indeterminate sentences to be released on parole.
4     However, the law itself is neutral inasmuch as it gives the governor
      power to either affirm or reverse a BPT's granting or denial of
5     parole.  Moreover, the governor must use the same criteria as the
      BPT.  The law, therefore, simply removes final parole
6     decisionmaking authority from the BPT and places it in the hands
      of the governor.  We cannot materially distinguish this change in
7     the law from that at issue in Mallet v. North Carolina, 181 U.S.
      [589,] at 590, 21 S.Ct. [730,] at 731.  In Mallet, the Court found no
8     ex post facto violation where the new law allowed for higher court
      review of intermediate court decisions, even though the petitioner
9     would have been entitled to a final intermediate court decision at
      the time of his crime.  We therefore conclude that the application
10    of Proposition 89 to authorize the governor's review of Johnson's
      grant of parole did not violate the Ex Post Facto Clause.

11

12    Id. at 967 (internal citations omitted).

13         Petitioner's arguments are similar to those that were rejected in Johnson.  The Governor's

14    review is based on the same criteria and record used by the Board.  The additional layer of review

15    is neutral and does not, it and of itself, increase Petitioner's punishment.  Petitioner is not entitled

16    to federal habeas relief on Claim II.

17         C.  Claim III[2]

18         Finally, in Claim III, Petitioner alleges that "the Board failed to comply to California

19    Penal Code § 1170.2 and § 3041(c)."  (Pet'r's Pet. at p. 23.)  Specifically, Petitioner argues that

20    _____

21         [2] In its answer, Respondent asserts that the only claim in which Petitioner exhausted his
      state court remedies was his "claim that the Governor's decision violated his due process
22    rights."(Resp't's Answer at p. 2.)  However, Petitioner clearly raised Claims II and III to the
      California Supreme Court.  (See Resp't's Answer, Ex. E at p. 17-24.)  Furthermore, even though
23    the Superior Court denied Claim III on procedural grounds, as previously noted, the California
      Supreme Court summarily denied Petitioner's habeas petition.  This type of "postcard" denial is
24    construed as a decision on the merits.  See Harrington, 2011 WL 148587, at *9; see also Gatson
      v. Palmer, 417 F.3d 1030, 1038 (9th Cir. 2005), modified on other grounds, 447 F.3d 1165 (9th
25    Cir. 2006); id. at 1036 ("[T]he California Constitution provides that each of the three levels of
      state courts - Superior Court, Courts of Appeal, and the Supreme Court - has original jurisdiction
26    in habeas proceedings.") (internal quotation marks and citation omitted)

8

1   he should have been before the Board no later than October 1, 1978 and have had a parole release

2   date set at that time.  First, to the extent that Petitioner bases this Claim under state law, it is not

3   cognizable on federal habeas review.  See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) (stating

4   that it is not the province of a habeas court to examine state law questions).  However, Petitioner

5   also alludes to his equal protection and due process rights within this Claim.  The ISL and DSL

6   schemes both require that a prisoner be found suitable for parole before a parole date can be set.

7   See In re Stanworth, 33 Cal. 3d 176, 183, 187 Cal. Rptr. 783, 654 P.2d 1311 (1982) ("Under both

8   the 1976 and the current rules, a life prisoner must first be found suitable for parole before a

9   parole date is set.").  Furthermore, as previously stated, the ISL and DSL schemes both use the

10   same criteria for determining whether a prisoner was suitable for parole.  See Connor, 981 F.2d

11   at 1033-34.  Petitioner has not shown that he was discriminated against based on his membership

12   in a protected class, see Lee v. City of Los Angeles, 250 F.3d 668, 686 (9th Cir. 2001), or that

13   similarly situated individuals were treated differently without a rational basis for the difference in

14   treatment.  Cf. Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000) (per curiam).

15   Petitioner's claims with respect to Claim III are without merit and do not warrant federal habeas

16   relief.

V.  CONCLUSION

18       Accordingly, IT IS HEREBY ORDERED that the December 14, 2010 findings and

19   recommendations is VACATED.

20       Furthermore, IT IS HEREBY RECOMMENDED that Petitioner's Petition for writ of

21   habeas corpus be DENIED.

22        These amended findings and recommendations are submitted to the United States

23   District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within

24   twenty-one days after being served with these findings and recommendations, any party may file

25   written objections with the court and serve a copy on all parties.  Such a document should be

26   captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the

1 objections shall be served and filed within seven days after service of the objections.  The parties

2 are advised that failure to file objections within the specified time may waive the right to appeal

3 the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).  In any objections he

4 elects to file, petitioner may address whether a certificate of appealability should issue in the

5 event he elects to file an appeal from the judgment in this case.  *See* Rule 11, Federal Rules

6 Governing Section 2254 Cases (the district court must issue or deny a certificate of appealability

7 when it enters a final order adverse to the applicant).

8 DATED:  January 28, 2011

9

10

11 _____

TIMOTHY J BOMMER

12 UNITED STATES MAGISTRATE JUDGE

13

14

15

16

17

18

19

20

21

22

23

24

25

26